## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

ANTHONY KEITH WHITE,

      Petitioner,

v.                                 Case No.  3:19-cv-3454-LC-MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Anthony Keith White, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 16). White replied. (Doc. 18). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that White is not entitled to habeas relief.[1]

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

On August 16, 2015, White recklessly drove his vehicle while impaired by alcohol, and crashed into another vehicle. The passenger of the other vehicle—Robin Brown—died at the scene as a result of his injuries from the crash. (Doc. 16, Attach. 1, Ex. A at 4-5 (Arrest Report)).[2]

In Santa Rosa County Circuit Court Case No. 2015-CF-1025, White was charged with Driving Under the Influence ("DUI") Manslaughter (Count 1) and Reckless Driving (Count 2). (Doc. 16, Attach. 1, Ex. A at 24). The parties engaged in extensive discovery for over 7 months. (*Id.* at 20, 27-76). The defense deposed at least ten witnesses. (*Id.* at 65, 72).

On March 29, 2016, White entered a straight-up plea of *nolo contendere* to both counts as charged. (Doc. 16, Attach 1, Ex. A at 91-94 (Plea Form); Doc. 16, Attach 2, Ex. B (Tr. of Plea Hr'g)). There was no agreement as to White's sentence. (*Id.*). White's maximum possible sentence was 15 years of imprisonment with a 4-year mandatory minimum term of imprisonment. (Doc. 16, Attach. 1, Ex. A at 91 (Plea Form); Doc. 16, Attach. 2, Ex. B at 2 (Tr. of Plea Hr'g)); *see also* Fla. Stat. §§

---

[2] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer (Doc. 16). The court cites the attachment number followed by the lettered exhibit. When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom left corner of the page.

316.193(1), 316.193(3)(a)(b)(c)3.a; Fla. Stat. § 775.082(3)(d). White's lowest permissible sentence under Florida's Sentencing Guidelines was 127.8 months of imprisonment—just over 10½ years. (Doc. 16, Attach. 1, Ex. A at 98-100 (Criminal Punishment Code Scoresheet); Doc. 16, Attach. 2, Ex. B at 3 (Tr. of Plea Hr'g)). The trial court placed White under oath, conducted a plea colloquy, determined that his plea was knowing and voluntary, accepted the plea, and set the matter for sentencing. (Doc. 16, Attach. 2, Ex. B).

White's sentencing hearing was held on May 18, 2016. (Doc. 16, Attach. 2, Ex. C (Tr. of Sentencing). The trial court heard statements from the victim's family and from White himself. The State sought the maximum sentence of 15 years of imprisonment. (*Id*. at 11). The defense sought "a downward departure . . ., and if not, at least the bottom of the guidelines." (*Id*. at 15). The trial court sentenced White to 12 years of imprisonment with a 4-year mandatory minimum term, followed by 3 years of probation. (*Id*. at 19; *see also* Doc. 16, Attach. 1, Ex. A at 103-07 (J. and Sentence); Doc. 16, Attach. 2, Ex. A at 129-31 (Order of Probation)).[3]

White appealed his conviction and sentence. (Doc. 16, Attach. 2, Ex. A at 24). White's appellate counsel filed an *Anders*[4] brief. (Doc. 16, Attach. 2, Ex. D). White

---

[3] White was sentenced to "time served" for the reckless driving offense.

[4] *Anders v. California*, 386 U.S. 738 (1967).

was given the opportunity to file a *pro se* brief, but did not file a brief. (Doc. 16, Attach. 2, Ex. F). On January 20, 2017, the Florida First District Court of Appeal ("First DCA") affirmed the judgment without written opinion. *White v. State*, 222 So. 3d 1213 (Fla. 1st Dist. Ct. App. 2017) (per curiam) (Table) (copy at Doc. 16, Attach. 2, Ex. G).

On June 15, 2017, White filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 16, Attach. 2, Ex. O at 11-24). The state circuit court summarily denied relief. (*Id*. at 25-65). The First DCA affirmed without written opinion. *White v. State*, 267 So. 3d 354 (Fla. 1st Dist. Ct. App. 2018) (Table) (per curiam) (copy at Doc. 16, Attach. 3, Ex. R). The mandate issued April 24, 2019. (Doc. 16, Attach. 3, Ex. W).

On July 14, 2017, White filed a *pro se* petition in the First DCA alleging ineffective assistance of appellate counsel. (Doc. 16, Attach 3, Ex. X). On February 9, 2018, the First DCA denied the petition on the merits. *White v. State*, 240 So. 3d 61 (Fla. 1st Dist. Ct. App. 2018) (per curiam) (copy at Doc. 16, Attach. 3, Ex. BB).[5]

White filed his federal habeas petition on September 11, 2019. (Doc. 1). The petition raises two claims of ineffective assistance of trial counsel. (*Id*. at 5-7). The

---

[5] White also filed various applications to modify and correct his sentence, which were denied. (*See* Doc. 16, Exs. A, EE-OO).

parties agree that White presented these claims to the state court in his Rule 3.850 proceeding. (Doc. 1 at 5-8; Doc. 16 at 7-8, 17, 28). The State asserts that White is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 16 at 17-34).

## II.   RELEVANT LEGAL STANDARDS

## A.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[6] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

Page 6 of 25

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**B.**    **Clearly Established Federal Law Governing *Nolo Contendere* Pleas**

In determining the validity of a plea to a criminal charge, a plea of *nolo contendere* stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *Hudson v. United States*, 272 U.S. 451 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) ("Under Florida law, a plea of nolo contendere is equivalent to a plea of guilty."). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc) (citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969)). The Due Process Clause requires that a guilty plea be entered knowingly and voluntarily. *Boykin*, 395 U.S. at 243 n.5; *see also Bousley v. United States*, 523 U.S. 614, 618 (1998). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242. The assistance of counsel received by a defendant is relevant to the question of whether

a defendant's guilty plea was knowing and intelligent *insofar as it affects the defendant's knowledge and understanding. See McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).

"Once a plea of guilty [or *nolo contendere*] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings."). This waiver includes claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *see also Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (holding that the waiver rule "includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself") (citing *McMillin v. Beto*, 447 F.2d 453, 454 (5th Cir. 1971); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)).

The Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258 (1973):

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has

> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, he may not thereafter raise independent
> claims relating to the deprivation of constitutional rights that occurred
> prior to the entry of the guilty plea. He may only attack the voluntary
> and intelligent character of the guilty plea by showing that the advice
> he received from counsel was not within the standards set forth in
> *McMann*.

*Id.* at 267.

The advantages of entering a plea only may be secured "if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor
> at such a hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings. Solemn declarations in open court carry a strong
> presumption of verity. The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have

disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Premo*, 562 U.S. at 118 (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (quoting *McMann*, 397 U.S. at 771). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going

to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id*. (citing *Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973), in turn citing *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948)).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano*, 921 F.2d at 1150-51 (citing *McMann*, 397 U.S. at 774; *Tollett*, 411 U.S. at 267; and *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial. *Id.*, 474 U.S. at 58-59. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    DISCUSSION

White's two claims for habeas relief are interrelated and rely on the same factual basis. (Doc. 1, Mem. at 1-7). Accordingly, the undersigned addresses the claims together.

| | |
|---|---|
| **<u>Ground One</u>** | **<u>"Ineffective assistance of counsel, where counsel [failed to] investigate and retain/call B.A.C. expert, U.S. Constitution violation." (Doc. 1 at 5).</u>** |
| **<u>Ground Two</u>** | **<u>Ineffective assistance of counsel, where counsel misadvised Petitioner in violation of U.S. Constitution." (Doc. 1 at 7).</u>** |

White claims in Ground One that trial counsel was ineffective for failing to retain an expert to analyze whether two factors increased his blood-alcohol level: (1) medications White took earlier on the day of the accident (Keppra and Flexiril); and (2) a five-hour delay between the accident and the blood draw. (Doc. 1 at 5). White asserts that had counsel retained an expert, he "would not have accepted an open plea to the court, but proceeded to trial because Petitioner was not drunk impaired on the night of the car accident." (*Id.*).

White claims in Ground Two that counsel was ineffective for misadvising him that if he entered a straight-up plea of *nolo contendere* to the charges, the court would impose a sentence of 3-5 years of imprisonment. (Doc. 1, Mem. at 5). In support of his claims, White alleges the following.

On March 29, 2016, White advised counsel that he was not "drunk" at the time of the accident, and asked counsel if his medications and the 5-hour delay in the blood draw could have increased his blood-alcohol level. (Doc. 1, Mem. at 1). According to White, counsel responded "that more likely than not the (B.A.C.) blood alcohol content results were very affected by the mixture as well as the five (5) hour delay before submitting the test." (*Id*.). Nevertheless, counsel discouraged White from hiring an expert to review the toxicology evidence and persuaded White to enter a straight-up plea of *nolo contendere*, by assuring him that: (1) "he would receive a sentence between three (3) to five (5) years imprisonment," and (2) "even if Petitioner succeeded in challenging the blood alcohol content (B.A.C.) test results, Petitioner could still receive a sentence up to five (5) years imprisonment, even without the DUI element of Vehicular Manslaughter." (Doc. 1, Mem. at 2, 5-6). White maintains that counsel's misadvice about his sentence—that he would be sentenced to no more than 5 years of imprisonment—caused him to enter the *nolo contendere* plea in lieu of challenging the State's toxicology evidence. (*Id*.).

## A.    State Court's Decision

White presented his claims to the state courts in his Rule 3.850 proceeding. (Doc. 16, Attach. 2, Ex. O at 14-18). There, White provided more details about the blood draw and his blood-alcohol level. He alleged that the car accident occurred at

8:05 p.m. but that his blood was not drawn for testing until approximately 1:10 a.m. the following morning; and that his blood-alcohol level was .215 grams of alcohol per 100 milliliters of blood. (Doc. 16, Attach. 2, Ex. O at 14-18).

The state circuit court denied relief on both claims. The court identified *Strickland* and *Hill* as the governing standard, and recognized the clearly established principle that "a defendant cannot go behind the plea and raise issues that were known when he entered the plea." (Doc. 16, Attach. 2, Ex. O at 26-27). The court denied relief for these reasons:

### Ground One

Defendant claims counsel was ineffective for failing to investigate and retain a blood alcohol content expert. Defendant alleges prior to accepting the plea he informed counsel he was not impaired and inquired whether alcohol combined with the medications, Keppra and Flexiril, he had taken earlier would have contributed to his blood alcohol content level being so high. Additionally, Defendant alleges he inquired twice if the 5-hour delay between the accident and his blood being drawn could have affected the accuracy of the blood alcohol content results. Defendant avers counsel indicated "more likely than not the B.A.C. results were affected by the mixture as well as the five (5) hour delay before submitting the test." Defendant alleges counsel had a duty to investigate and review the Florida Highway Patrol Alcohol and Drug Influence Report, the Florida Highway Patrol Offense Report and probable cause affidavit, and if he had reviewed the reports, it would have verified his blood was not drawn until almost 5 hours later. Thereby, Defendant avers counsel should have retained an expert to refute/challenge the blood alcohol content results. Defendant claims an expert would have testified blood alcohol content levels increase as time progresses in individuals taking Keppra and Flexeril while consuming alcohol and the test results would have been inaccurate and

unreliable. Defendant claims, absent counsel's substandard performance, he would not have accepted the plea and would have proceeded to trial. Defendant's claim is refuted  by the record.

A review of the plea proceedings held on March 29, 2016, reflects Defendant entered a straight-up plea to the Court, he was satisfied with the help of his attorney, and he stipulated to a factual basis. (Exhibit B, Transcript. pp. 2-3). The sentence recommendation signed on March 29, 2016, reflects the following: a stipulation to the factual basis of the arrest report or offense report or probable cause affidavit; Defendant's satisfaction with his counsel's advice and services; waiver of his right to present any and all defenses he may have had; and a stipulation there are sufficient facts available to the State to justify his plea of *nolo contendere*. (Exhibit C). The arrest report dated August 17, 2015, motion for pretrial detention, and subsequent order for pretrial detention entered on August 19, 2015, outline the probable cause of Defendant having committed the offenses of DUI manslaughter and reckless driving. (Exhibits D, E, and F). Defendant is attempting to go behind his plea. A defendant cannot go behind the plea and raise issues that were known when he entered his plea in a rule 3.850 motion. *Gidney v. State*, 925 So. 2d 1076 (Fla. 4th DCA 2006).

## Ground Two

Defendant claims counsel was ineffective for advising him to enter an open plea to the Court. Defendant alleges counsel stated if he accepted responsibility for his crimes, he would receive a sentence of 3 to 5 years of imprisonment due to his minimal prior criminal history. Defendant avers when the Court inquired if any promises of a particular sentence were made, his understanding was it was a routine question and counsel instructed him "to just go along with the routine colloquy." Defendant claims, absent counsel's misadvice, he would not have accepted the plea and would have proceeded to trial. Defendant's claim is refuted by the record.

As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated will-nilly after the fact; it is a formal ceremony, under oath, memorializing a

crossroads in the case. What is said and done at a plea conference carries consequences." *Scheele v. State*, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). Defendant cannot take an oath to tell the truth and later claim his attorney advised him to commit perjury. *See Iacono v. State*, 930 So. 2d 829, 830-32 (Fla. 4th DCA 2006). A review of the plea proceedings held on March 29, 2016, reflects after Defendant was sworn, the Court notified him the maximum sentence for DUI manslaughter was 15 years, and Defendant indicated he understood. (Exhibit B, Transcript, p. 2). The Court inquired if any promises had been made to Defendant to get him to enter a straight-up plea, and he indicated no promises had been made. (Ex. B, Transcript, p. 2). The Court inquired if anyone forced Defendant in any way to enter the plea, and he indicated he was not forced. (Exhibit B, Transcript, p. 2). The Court inquired if Defendant understood that pursuant to the scoresheet the lowest permissible sentence was 127 months in state prison, and he indicated he understood and still wished to enter a straight-up plea. (Exhibit B, Transcript, p. 3). The Court found Defendant's plea to be free, voluntary, knowing, intelligent, and factually based, there was no objection to the scoresheet, and sentencing was scheduled to take place on May 12, 2016. (Exhibit B, Transcript, p. 4). A review of the sentencing proceedings held on May 18, 2016, reflects the State indicated that pursuant to the scoresheet the lowest permissible sentence was 127.8 months and with the DUI manslaughter a 4-year mandatory minimum prison sentence was required to be imposed legally and statutorily. (Exhibit G, Transcript, pp. 10-11). The Criminal Punishment Code Scoresheet reflects the lowest permissible prison sentence in months as 127.8 and the maximum sentence in years as 15 (Exhibit H). The sentence recommendation signed on March 29, 2016, also reflects a mandatory minimum sentence of 4 years and a maximum sentence of 15 years for DUI manslaughter. (Exhibit C).

(*Id*. at 27-30). The First DCA summarily affirmed. (Doc. 16, Attach. 3, Ex. R).

## B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of

White's claims, and, therefore, is entitled to deference under § 2254(d). *See Richter*,

562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___ U.S. ___ , 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected White's claims for the reasons provided by the state circuit court.

In reviewing the state court's decision, this court defers to the state court's factual findings because they are amply supported by the record and because White has not rebutted them with clear and convincing evidence to the contrary. Given the state court's factual findings, and upon review of the plea form and plea hearing

transcript, a fairminded jurist could agree with the state court's conclusion that White failed to show that his plea was unknowing or involuntary.

White admits in his petition that he was aware of the facts underlying his proposed toxicology defense prior to entering his plea; that he and counsel discussed the issue; that counsel advised him that it was a potential defense; and that he decided to waive that defense—and to stipulate that he was impaired—by entering a straight-up plea of *nolo contendere*. White now seeks to go behind his decision by claiming that it was induced by counsel's promise that he would be sentenced to only 3-5 years of imprisonment for the DUI Manslaughter. (Doc. 1 & Mem.).

The plea form White executed confirms that: (1) White reviewed all of the discovery materials with counsel; (2) White reviewed the facts of his case with counsel, and he agreed and stipulated that there were sufficient facts available to the State to justify his plea of *nolo contendere* to DUI Manslaughter; (3) White stipulated to all of the facts contained in the arrest report and probable cause materials; (4) White understood that his sentence for DUI Manslaughter could be as high as 15 years of imprisonment, and that the sentence was subject to a 4-year mandatory minimum; (5) White understood he was waiving any and all defenses he

might have; and (6) White was satisfied with counsel's advice and services. (Doc. 16, Attach. 1, Ex. A at 91-94). White explicitly certified:

> If represented by an attorney, I am satisfied with the attorney's advice and services and my attorney has not compelled or induced me to enter into this Sentence Recommendation by any force, duress, threats or pressure. My attorney, the Court and the prosecutor have not made any promises nor have I relied on any representations as to the actual time I would serve if I were to be incarcerated under the terms of this Sentence Recommendation.

(*Id*. at 91-92).

At his plea hearing, White affirmed under oath that he understood that he could be sentenced to 15 years of imprisonment for the DUI Manslaughter, and that the lowest permissible sentence was more than 10 years in state prison. The trial court asked White:

> THE COURT:     All right. Now, Mr. White, you understand that on the scoresheet the lowest permissible is 127 months, which is a little bit over ten years—
>
> THE DEFENDANT:     Yes, sir, I do.
>
> THE COURT:     —in state prison. You're aware of that?
>
> THE DEFENDANT:     Yes, sir, I am.
>
> THE COURT:     All right. And you still wish to go with a straight up plea?
>
> THE DEFENDANT:     Yes, sir, I do.

(Doc. 16, Attach. 2, Ex. B at 3). White also affirmed that no one made any promises to him to persuade him to enter the plea; that he was satisfied with the assistance of his attorney; and that he did not have any questions concerning his plea or the consequences of entering it. (Doc. 16, Attach. 2, Ex. B at 2-3).

On this record, a fairminded jurist could agree with the state court's conclusion that the record refutes White's allegation that his *nolo contendere* plea (and attendant decision not to challenge the State's evidence of impairment) was induced by counsel's misadvice that he would receive a 5-year sentence. White is not entitled to habeas relief on either of his claims.

## IV.    CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537

U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Anthony Keith White*, Santa Rosa County Circuit Court Case No. 2015-CF-1025, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

Page 24 of 25

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>10th</u> day of March, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**